YATES and McINTYRE *vs.* O'NEALE and SMITH.—*December, 1831.*

The act of 1821, ch. 232, was not designed to prevent the mere sale of lottery tickets, or to impose upon the seller the necessity of obtaining a license therefor. Its prohibitions only extend to the opening, setting up, exercising, or keeping any office or other place, for selling lottery tickets, or registering the numbers, or publishing the setting up, &c. without having first obtained a license for that purpose.

A contract between A and B, by which the latter agreed to become the agent of the former, for the sale of lottery tickets, account for, and remit a

certain part of the sales of tickets, return unsold tickets, and bear the expenses of the agency, is not void under the act of 1821. There is nothing in such a contract, upon any principle of construction applicable to penal statutes, that could warrant a jury in inferring that the agent had agreed to open an office, &c. of the character described in the act ; and the court will not presume that A intended to violate that law, by having an office kept without a license.

Appeal from *Frederick* County Court.

This was an action of *Assumpsit,* instituted by the present appellants, against the appellees, on the 31st of July, 1826, upon the following written contracts : "Know all men by these presents, that we, *H. G. O'Neale* and *Jonas Smith,* are held and firmly bound unto *John B. Yates* and *Archibald McIntyre,* in the penal sum of $1,000, to be paid to the said *Yates and McIntyre,* or either of them, or their certain attorney, heirs, executors, administrators or assigns, to which payment well and truly to be made, we bind ourselves, our heirs, &c. Witness our hands and seals, this 24th day of June, 1824. Whereas, the above bounden *H. G. O'Neale* has undertaken, as agent for the above named *Yates and McIntyre,* to vend lottery tickets, for which he is to receive a certain allowance, as agreed upon between them and the said above bounden *H. G. O'Neale;* and has also agreed to make due returns of such money as he shall receive for said tickets, and sell them at such prices as he may from time to time be directed by them, or their agent residing in *Baltimore:* now therefore, the condition of the above obligation is such, that if the above named *H. G. O'Neale* shall well and faithfully perform his duty, as agent aforesaid, pursuant to the instructions he shall from time to time receive, and duly return all the money which he shall receive for lottery tickets, or shares, as soon as received by him, then this obligation to be void, or else to remain in full force. *H. G. O'Neale, Jonas Smith.*"

"Memorandum of agreement between *H. G. O'Neale* and *John B. Yates,* and *Archibald McIntyre,* by *S. Scribner,* their agent, made this 24th of June, 1824. The said *H. G. O'Neale* agrees to sell lottery tickets for said *Yates and*

*McIntyre,* for cash only, and return to their agent in *Balti-more* all such money, as he shall, from time to time, receive for them, by mail, unless otherwise directed. And he also agrees to return to the office in *Baltimore,* by mail, if not otherwise directed, all such tickets as shall remain unsold, at such time previous to the drawing, as he shall be directed by the said *Yates and McIntyre,* or their agent residing in *Baltimore.* And the said *Yates and McIntyre* agree to allow the said *H. G. O'Neale,* for all the tickets he shall so sell and remit, the money for one-half the advance price for which they shall sell, over and above the scheme price of the tickets; the business of the agency, and expenses thereof, to be borne by the said *H. G. O'Neale,* except the postage, which is to be charged equally to both the parties. *H. G. O'Neale. S. Scribner,* agent for *Yates and McIntyre."*

It was admitted that the defendant, *H. G. O'Neale,* as agent of the plaintiffs, after the execution of the said in-strument of writing, received from the plaintiffs sundry lottery tickets, and shares of lottery tickets, in a certain lottery thereafter to be drawn, and which lottery was au-thorised by an act of assembly of this State, and that he vended and disposed of said tickets, as such agent, in the town of *Middletown,* in *Frederick* county, and received from the vendees respectively, the prices thereof: and that on the 23d of September, in the year 1825, he was in arrears in the sum of $398 25, for money by him previously re-ceived, for tickets by him previously sold, as such agent, and for which he had not returned the money to the plain-tiffs, or their agent, or in any way paid, or accounted for the same. The plaintiffs also proved, by a competent wit-ness, that afterwards, and after the determination of such agency, the defendants acknowledged that the said sum was in arrear as aforesaid, and promised to pay the same within two weeks thereafter, and that the same money and every part thereof, is yet unpaid. The plaintiffs here rested their case. The defendants then prayed the court to instruct the jury, that the plaintiffs are not entitled to recover in

this cause from the evidence offered; because the contract on which the suit is brought, is void, by virtue of an act of assembly of this State, passed at December session, 1821, *ch.* 232, which instruction the court (SHRIVER, and Th. BUCHANAN, A. J.) gave. The defendant excepted.

2. The plaintiffs then, upon the facts stated in the aforegoing bill of exception, prayed the court to instruct the jury, that if they shall believe from the evidence in the case, that *H. G. O'Neale*, as such agent, was in arrear to the plaintiffs, in the sum of $398 25, and that afterwards the defendants acknowledged the said sum to be due to the plaintiffs, and promised to pay the same to the plaintiffs within two weeks thereafter, and that they have failed to do so, and that the same is yet due; then the plaintiffs are entitled to a verdict for such sum as the said sum of $398 25, with interest from the day of the impetration of the writ in this cause, shall amount to. Which instruction the court refused to give, and the verdict and judgment being for the defendants, the plaintiffs appealed to this court.

*Wm. Schley*, for appellant.

1. The contract is not void by the act of 1821, *ch.* 222. This act does not prohibit the business of vending lottery tickets; nor does it forbid the creation of an *agency* for that purpose. It is just as lawful to vend lottery tickets in authorised lotteries, by agent, as it is to vend merchandize, by agent. In both cases a license is necessary; not to legitimate the pursuit, but to qualify the vendor. How does the contract contravene the provisions of the act? The creation of an agency with a view to the sale of tickets, is not *ipso facto*, opening an office for that purpose, within the meaning of the act. It was a preparatory step. No one can be said to sell by agent, until he has constituted one. It is not shewn affirmatively, that a license was obtained; but *non constat*, that one was not procured. *O'Neale* was to bear the expenses of the agency; and, if necessary, it ought to be presumed, that a license was obtained. But

this is immaterial. A contract cannot be considered *in fraudem legis*, unless the parties had in view, at the time of its formation, a violation of the law. It is not good or bad by matter subsequent. 1 *Com. on Cont.* 31. *Bull, N. P.* 146. There is nothing upon the face of either contract shewing it to be of this character; nor is there any thing in the record, *dehors* the contracts, from which it might be inferred that a violation of this act was within their scope and object. Fraud is never presumed, much less a criminal intent. 2. But if there was any foundation for this objection, these defendants could not make it successfully. Where an agent has received money for his principal, he cannot set up in excuse of his resposibility, the supposed illegality of the dealings of which such money is the fruit. 1 *Bos. and Pull.* 296. 2 *Stark. Ev.* 120. These defendants are answerable upon their contract, precisely to the same extent that *O'Neale* himself would be accountable.

*Palmer*, for the appellant, contended, that the question really was, whether a party can vend lottery tickets without a license, and recover the proceeds of such sale; and not whether the contract is void, by virtue of the act of assembly referred to. If the parties are *particeps criminis* in a void contract, neither can sue upon it. Though the rule may be, that money received by an agent, under a void contract, may be recovered from him by his principal, it can only apply to the agent, and *Smith*, the surety, does not fall within its operations. The suit was brought on the written contract, and the right to recover does not rest upon any supposed, implied agreement, growing out of the receipt of money by the agent, for the use of the principal. Contracts in violation of the common, or statute law, are void, and cannot form the foundation of an action. In this case, the obtension of a license was a condition *precedent* to the right to sell, and the selling without, is prohibited. *Aubert vs. Maze*, 2 *Bos. and Pul.* 374, 375. *Collins vs. Blantern*, 2 *Wilson*, 351. *Bensley vs. Bignold*, 7 *Serg. and*

*Low*, 121. Where a contract is prohibited by statute, under a penalty, it is void, though not in terms declared to be so. 2 *Carth.* 252. 1 *Com.* 38. 1 *Bos. and Pul.* 264. *Coleman vs. Wathen*, 5 *Term*, 245. *Steers vs. Lashley*, 6 *Ib.* 61. *King vs. Handy, Ib.* 286. *Buck vs. Buck*, 1 *Camp.* 547.

*Wm. Schley*, in reply, insisted that this case differed from those cited on the other side. They respect the doing of some prohibited act, or some forbidden pursuit; and for which no *license* could be had. No license could be had which would *qualify* a person to commit *murder*, or to engage in *smuggling*, or to sell impure or *unwholesome liquors*, or to utter counterfeit *coin*, or to do any thing else, which is *malum in se*, or even *malum prohibitum*. He cited *Johnson vs. Hudson*, 11 *East*, 180, as illustrating the distinction.

DORSEY, J., delivered the opinion of the court.

The only question which this court are called on to determine, is, did the county court err in granting the defendants' prayer in the first bill of exceptions? and to our minds, it is obvious that they did. The agreements between *O'Neale* and *Yates* and *McIntyre*, are simply an engagement on the part of the former, to sell lottery tickets, as the agent of the latter. The act of *1821, ch. 232*, does not forbid this; nor were any of its provisions designed to prevent the mere sale of lottery tickets, or to impose upon the seller the necessity of obtaining a license therefor. The only prohibition therein contained, is to the opening, setting up, exercising or keeping, any office or other place for selling tickets, or registering the numbers, or by writing, printing, or otherwise to publish the setting up, opening or using any such office or offices, or other place, without having first obtained a license for that purpose. There is nothing in the agreements, upon any principle of construction applicable to penal statutes, which could warrant a jury, much less the court, in inferring that *O'Neale* had en-

gaged to open an office, &c. of the character described by this act of assembly; and the testimony is equally silent as to his obligations or acts under those agreements. But even suppose that these contracts bound *O'Neale* to keep an office, &c., is it a fair legal presumption to be drawn by the court, that *Yates* and *McIntyre* intended a violation of the law, and the keeping of such office without license? There is nothing in the nature or terms of the agreements themselves, or in the testimony contained in the bill of exceptions, which could justify such a conclusion. Dissenting therefore from the opinion delivered by the county court in the *first* bill of exceptions, we reverse their judgment.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**